UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CENTRAL NEW YORK LABORERS'
HEALTH AND WELFARE FUND by Janet
Moro, as Fund Administrator, CENTRAL
NEW YORK LABORERS' PENSION FUND
by Janet M. Moro, as Fund Administrator,
CENTRAL NEW YORK LABORERS'
ANNUITY FUND by Janet M. Moro, as
Fund Administrator, CENTRAL NEW YORK
LABORERS' TRAINING FUND by Janet M.
Moro, as Fund Administrator, NEW YORK
STATE LABORERS-EMPLOYERS
COOPERATION AND EDUCATION TRUST by
James Melius, as Administrator, NEW YORK
STATE LABORERS HEALTH & SAFETY
FUND by James Melius, as Administrator,
CONSTRUCTION AND GENERAL
LABORERS' LOCAL UNION NO. 633 by
Gabriel M. Rossetti, III, as Business Manager,
and CONSTRUCTION EMPLOYERS'
ASSOCIATION OF CENTRAL NEW YORK,
INC. by Earl R. Hall, as Executive Director,

    Plaintiffs,

  -v-            5:13-CV-226

FAHS CONSTRUCTION GROUP, INC.,
and RICHARD GANGEMI, Individually and as
Officer of Fahs Construction Group, Inc.,

    Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:          OF COUNSEL:

BLITMAN, KING LAW FIRM      JENNIFER A. CLARK, ESQ.
Attorneys for Plaintiffs
Franklin Center
443 North Franklin Street, Suite 300
Syracuse, NY 13204

| | |
|---|---|
| DUKE, HOLZMAN LAW FIRM<br>Attorneys for Defendant Fahs<br>   Construction Group, Inc.<br>350 Main Street, Suite 1800<br>Buffalo, NY 14202 | PATRICIA GILLEN, ESQ. |
| PRIBISH-REISS LLP<br>Attorneys for Defendant Richard Gangemi<br>116 Village Boulevard, Suite 200<br>Princeton, NJ 08540 | JOHN J. PRIBISH, ESQ. |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. INTRODUCTION

Plaintiffs Central New York Laborers' Health and Welfare Fund, Central New York Laborers' Pension Fund, Central New York Laborers' Annuity Fund, Central New York Laborers' Training Fund, New York State Laborers-Employers Cooperation and Education Trust, and New York State Laborers Health & Safety Fund ("the Funds"), along with the Construction Employers' Association of Central New York, Inc. and the Construction and General Laborers' Local Union No. 633 ("the Union") (collectively "plaintiffs"), initially filed this action against defendants Fahs Construction Group, Inc. (the "Corporation") and Richard Gangemi ("Gangemi"), it Chief Operating Officer and authorized agent.

Plaintiffs sought monetary and injunctive relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), the Labor-Management Relations Act of 1947 ("LMRA"), and related state law based on defendants' alleged failure to remit certain benefit contributions to the plaintiff Funds on behalf of employees covered by provisions in the plaintiff Union's collective bargaining agreements.

On March 2, 2015, Gangemi moved individually to dismiss the complaint against him in its entirety pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1), arguing that the so-called "lynchpin" of plaintiffs' case—a collective bargaining agreement allegedly executed by the parties in March 2005—is a forgery. In the alternative, Gangemi sought summary judgment pursuant to Rule 56, arguing there is no evidence to establish that defendants ever intended to be bound by the 2005 agreement.

Thereafter, plaintiffs moved for partial summary judgment against the Corporation on claims arising from the Project Labor Agreement ("PLA"), a different contract than the now-contested collective bargaining agreement from 2005. Plaintiffs' motion also sought to voluntarily dismiss with prejudice, pursuant to Rule 41, all claims against Gangemi as well as all "non-PLA" claims against the Corporation. The Corporation opposed plaintiffs' motion and filed its own cross-motion for summary judgment.

All three pending motions have been fully briefed and each will be considered on the basis of the submissions and without oral argument.

## II. BACKGROUND

The Corporation is engaged in the general construction, heavy highway, and commercial paving businesses. Corp.'s Statement of Material Facts, ECF No. 68-5, ¶ 1 ("Def.'s Rule 7.1 Stat.").

On April 14 and September 29, 2011, the Corporation entered into written construction contracts with the Syracuse Joint Schools Construction Board ("JSCB") to perform construction work at Fowler High School and Dr. Weeks Elementary School, two buildings owned and maintained by the Syracuse City School District. See Def.'s Rule 7.1 Stat. ¶ 2; Pls.' Statement of Material Facts, ECF No. 60-1, ¶¶ 1-3 ("Pls.' Rule 7.1 Stat.").

These JSCB-approved construction projects were subject to the PLA at issue in this case. PLAs are "large-scale contracts common in the construction industry. PLAs typically select a union to represent workers on a project and are often signed before construction begins. " Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678 F.3d 184, 185 (2d Cir. 2012).

The JSCB's PLA incorporated a number of collective bargaining agreements into its terms and conditions, including a 2010-2011 collective bargaining agreement ("2010-2011 CBA") for the plaintiff Union involved in this case. Def.'s Rule 7.1 Stat. ¶ 4; Pls.' Rule 7.1 Stat. ¶¶ 4-5; see also Rosetti Aff. Ex. C, ECF No. 60-9, 86-146 (attaching full text of PLA).[1] The PLA contains two provisions identified by the parties as relevant to the instant dispute.

The first, entitled "Union Referral," provides in part:

> B. A Contractor may request by name, and the Local [Union] must honor, referral of persons who have applied to the Local [Union] for Program Work and who meet the following qualifications . . . .
>
> No more than 25 per centum of the employees covered by this Agreement, per Contractor by craft, shall be hired through the special provisions above (any fraction shall be rounded to the next highest whole number) . . . .
>
> If requested by the appropriate Union, a Contractor utilizing this provision for by-name referrals will furnish the Union with a written certification that the individuals requested for referral meet the [omitted qualifications set forth] above.

PLA Article 4, ¶ 2B (some paragraph breaks added, others omitted).

---

[1] Pagination corresponds with that assigned by CM/ECF.

> The second, entitled "Employee Benefits/Supplements," provides in part:
>
>> A.     . . . . Except as provided below and in 2B, the Contractors agree that such <u>payments shall be made to those established jointly trusteed employee benefit funds designated in Schedule A</u>, and in the amounts so designated, to the extent such amounts are required by Section 220 and payment to a Schedule A fund satisfies that obligation . . . .
>>
>> B.     Notwithstanding Section 2A, <u>Contractors who designate employees pursuant to Article 4, Sections 2B</u>, and who maintain bona fide private benefit plans that satisfy the requirements of Section 220 of the Labor Law, <u>may satisfy the above obligation with respect to those employees by providing those employees with coverage under their private benefit plans</u> (to the extent consistent with Section 220) or by electing to pay into the applicable jointly trusteed funds designated on Schedule A on their behalf, at the Contractor's option.  The total benefit payments to be made by a Contractor on behalf of those employees must equal the total Section 220 supplement amount and any shortfall must be paid by cash supplement to the employee.

PLA Article 11, ¶ 2A-B (emphases added) (some paragraph breaks added, others omitted).

According to plaintiffs, the Corporation failed to remit contributions and deductions to the "jointly trusteed employee benefit funds designated in Schedule A" in connection with hours worked by certain employees at the JSCB Projects as required by Article 11, Section 2A of this PLA.  Dooley Aff., ECF No. 60-2, ¶ 11.  Plaintiffs have provided an audit report identifying those employees, the hours they worked during the relevant time periods, and the contribution amounts allegedly due and owing as a result of that work.  See Dooley Aff., Ex. B, ECF No. 60-2, 12-32 ("Audit Report").

According to the Corporation, however, the individuals identified by plaintiffs' Audit Report were *not* members of the Union, but were rather "regular [Corporation] employees" who were properly designated as the Corporation's "core" employees in accordance with Article 4, Section 2B of the PLA.  Gangemi Aff., ECF No. 68-2, ¶¶ 7, 11.  Therefore, rather

than being required to remit contributions to the plaintiff Funds pursuant to Article 11, Section 2A, the Corporation maintains it was eligible to provide these core workers with coverage in accordance with Article 11, Section 2B. Id. ¶ 9.

The Corporation has provided evidence that it fulfilled the alternative requirements set forth in Article 11, Section 2B of this PLA by providing employees it had properly designated as "core" with coverage under private benefit plans that satisfied the requirements of New York Labor Law § 220 and then paying any remaining shortfall directly to these workers in cash. Gangemi Aff. ¶ 13 (noting 401K, employee stock ownership plan ("ESOP"), and private health insurance); see also Gangemi Aff. Ex. D, ECF No. 68-3, 49-53 (attaching favorable Internal Revenue Service letter rulings regarding Corporation's 401K and ESOP plans).

In other words, according to the Corporation, these core employees—the very same employees identified in plaintiffs' Audit Report as being the subject of this action—have already been paid "the full supplement amount in cash" that Article 11, Section 2B of the PLA obligated the Corporation to pay during each of the relevant time periods. Gangemi Aff. ¶ 16; see also Gangemi Aff. Ex. E, ECF No. 68-3, 54-58 (attaching Prevailing Wage Rates in Onondaga County for time periods at issue).

## III. LEGAL STANDARD

The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). A fact

is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Id. at 250.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

## IV. DISCUSSION

### A. Voluntary Dismissal of non-PLA Claims

As an initial matter, plaintiffs seek to voluntarily dismiss with prejudice all claims against Gangemi as well as all claims against the Corporation, except those based on the provisions of the PLA set forth above.

Rule 41 provides, in relevant part, that "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." FED. R. CIV. P.

41(a)(2).  "In deciding whether to dismiss a claim under Rule 41(a)(2), the relevant concern is 'whether the dismissal of the action will be unduly prejudicial to the defendants.'"  <u>Fortis Bank S.A./N.V. (Cayman Islands Branch) v. Brookline Fin. LLC</u>, 2012 WL 86448, at *2 (S.D.N.Y. Jan. 11, 2012) (quoting <u>Ferrato v. Castro</u>, 888 F. Supp. 33, 34 (S.D.N.Y. 1995)).

Gangemi opposes plaintiffs' attempt at voluntary dismissal, asserting that granting such a request would permit plaintiffs to evade any consequences for their improper reliance on an allegedly forged document.[2]  Notably, however, and unlike the various cases regarding Rule 41 dismissal cited in Gangemi's opposition brief, plaintiffs have requested a complete dismissal *with prejudice*.  Other courts considering that particular type of request have noted that

> [d]ismissal of an action with prejudice is a complete adjudication of the issues presented by the pleadings and is a bar to a further action between the parties.  An adjudication in favor of the defendants, by court or jury, can rise no higher than this.  Consequently, no matter when a dismissal with prejudice is granted, <u>it does not harm the defendant</u>:  The defendant receives all the that he would have received had the case been completed.

<u>Schwarz v. Folloder</u>, 767 F.2d 125, 129 (5th Cir. 1985) (emphasis added) (internal citations and quotation marks omitted).

In other words, granting plaintiffs' motion for voluntary dismissal now would have the effect of granting Gangemi the sort of relief he seeks—a complete, binding dismissal of all of plaintiffs' claims against him.  Gangemi maintains that this is insufficient, insisting the Court is

---

[2] "A fraud on the court occurs where it is established by clear and convincing evidence that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability to impartially adjudicate a matter by . . . unfairly hampering the presentation of the opposition party's claim or defense." <u>Passlogix, Inc. v. 2FA Tech., LLC</u>, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (citations and internal quotation marks omitted).

- 8 -

obligated to determine whether the signed document at issue is a forgery and thus worthy of "condemnation and sanction."

But three factors present in this case serve to undermine that assertion. First, although Gangemi's opposition brief now suggests plaintiffs' conduct should result not just in dismissal but also in other sanctions, his underlying moving papers did not clearly make that latter request. Second, and relatedly, Gangemi's underlying motion sought dismissal for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) or alternatively for dismissal pursuant to the Court's inherent powers, not sanctions pursuant to Rule 11. Third, and most importantly here, it is not at all clear from the existing record that plaintiffs ever acted improperly in relying on the signed document, forgery or otherwise.

"The essence of fraud on the court is 'when a party lies to the court and his adversary intentionally, repeatedly, and about issues that are central to the truth-finding process." Passlogix, Inc., 708 F. Supp. 2d at 393 (quoting McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)). "Fraud on the court, therefore, does not merely 'embrace any conduct of an adverse party of which the court disapproves;' rather, it 'embrace[s] only that species of fraud which does[,] attempts to, defile the court itself." Id. (quoting Kupferman v. Consol. Research & Mfg. Corp., 459 F.2d 1072, 1078 (2d Cir. 1972)).

In light of this exacting standard, and as Gangemi's opposition brief only now clearly requests, a lengthy evidentiary hearing would likely be warranted in order to resolve a

number of issues necessary to sort out this serious allegation.[3]  Of course, a threshold determination would first be required as to whether the signature on the document was, in fact, a forgery.  But even assuming that to be the case, a number of important questions would remain.  These would include, but likely not be limited to, determining whether plaintiffs are somehow responsible for the forgery, or if not, whether plaintiffs were sufficiently on notice of the document's possibly fraudulent nature so as to be obligated to conduct some additional degree of inquiry into its authenticity, and relatedly, whether such an investigation might have actually revealed the document's fraudulent status so as to preclude any good faith reliance on it in bringing this lawsuit.

Further, even assuming an evidentiary hearing were to resolve each of these questions, or a sufficient number of these questions, in a manner adverse to plaintiffs, the appropriate remedy would likely be dismissal of those claims *with prejudice*, the same relief that granting plaintiffs' Rule 41 request would provide right now.  See, e.g., Chen v. Wai? Café Inc., 2016 WL 722185, at *4 (S.D.N.Y. Feb. 19, 2016) ("In the most egregious cases, the Court may impose the 'pungent, rarely used, and conclusive' remedy of dismissal."  (citation omitted)); In re Dynex Capital, 2011 WL 2581755, at *3 (noting a finding of fraud on the court permits imposition of a "wide range of sanctions, [including those] as severe as the dismissal of a party's claims").

Therefore, after careful consideration of the voluminous submissions by the parties, and with particular attention paid to the fact that while a complex evidentiary hearing would

---

[3] "[I]t is within the Court's discretion to hold an evidentiary hearing on a sanctions motion, although no such hearing is required."  In re Dynex Capital, Inc. Sec. Litig., 2011 WL 2581755, at *3 (S.D.N.Y. Apr. 29, 2011) (Report & Recommendation), adopted by 2011 WL 2471267 (S.D.N.Y. June 21, 2011) ("In re Dynex Capital").

further delay these proceedings, granting plaintiffs' request for dismissal with prejudice would have the effect of permanently terminating those claims in Gangemi's favor, the proper course of action here is to grant plaintiffs' request.[4]  Cf. 9 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 2367 (3d ed. 2008) ("If the plaintiff moves for an order under Rule 41(a)(2) for voluntary dismissal, specifically requesting that the dismissal be *with prejudice*, it has been held that the district court must grant that request." (emphasis added) (footnote omitted)).  Accordingly, plaintiffs' motion to voluntarily dismiss with prejudice all claims against Gangemi as well as all non-PLA claims against the Corporation will be granted.

## B. Cross-Motions for Summary Judgment

What remains to be decided is plaintiffs' request for a judgment in the amount of $206,437.49 against the Corporation based on the contested provisions of the PLA.  This sum includes not only the $73,426.93 in contributions and deductions allegedly due and owing under the PLA and the 2010-2011 CBA for 3,998.50 hours of covered work, but also interest, liquidated damages, audit fees, and attorneys' fees and costs.

The Corporation opposes plaintiffs' motion for summary judgment and seeks a favorable summary disposition of its own, asserting that plaintiffs' claims are based on a "faulty" interpretation of the PLA's provisions.  The Corporation maintains that it has already fulfilled its obligations by paying a full cash supplement to the employees at issue pursuant to Article 11, Section 2B of the PLA and therefore owes nothing to the plaintiff

---

[4] "Rule 41(a) does not require dismissal of the action in its entirety." Blaize-Sampeur v. McDowell, 2007 WL 1958909, at *2 (E.D.N.Y. 2007) (collecting cases).  Therefore, the cross-motions for summary judgment on the remaining claims must still be decided.

Funds. Alternatively, the Corporation contests various aspects of plaintiffs' calculation of the $206,437.49 sum, which is based on an as-yet-incomplete discovery record.

ERISA provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. If an employer fails to make these required contributions, the court "shall award" the plan with: (1) "the unpaid contributions"; (2) "interest"; (3) "liquidated damages provided for under the plan"; (4) "attorney's fees and costs"; and (5) "such other legal or equitable relief the court deems appropriate." § 1132(g)(2).

As set forth above, Article 11, Section 2A of the PLA requires "Contractors," such as the Corporation, to make certain payments "to those established jointly trusteed employee benefit funds designated in Schedule A," which includes the plaintiff Funds here.

However, Article 11, Section 2B of the PLA permits Contractors "who maintain bona fide private benefit plans" an alternative means of satisfying this payment obligation: rather than pay into the plaintiff Funds, Contractors may "provid[e] those employees [who have been properly designated under Article 4] with coverage under their private benefit plans" and then pay any "shortfall" as a "cash supplement" directly to those employees.

Plaintiffs admit that the Corporation could escape the contribution obligation imposed by Section 2A and choose instead to comply with Section 2B, but only if it (1) properly designated employees who (2) did not exceed twenty-five percent of the workforce and (3) met certain qualifications established by the PLA as well as (4) maintained bona fide

private plans that satisfied New York Labor Law and (5) remitted contributions to those private plans on behalf of those appropriately qualified, properly designated employees.

According to plaintiffs, the Corporation failed to meet these requirements and was therefore obligated to remit contributions and deductions to plaintiff Funds "on behalf of any laborer performing work at the JSCB Projects, regardless of union affiliation and regardless of whether they were 'core employees' of [the Corporation]." Pls.' Reply Mem. at 5.

The Corporation claims it satisfied each of these criteria and is therefore excused from making any further contributions to the plaintiff Funds. With regard to the first three criteria, the Corporation maintains that it properly designated certain "core" employees who met the requirements of Article 4 of the PLA. With regard to the fourth criterion, the Corporation points to evidence that it maintained the sort of bona fide private benefit plans required by the PLA in order to escape contribution liability to the plaintiff Funds.

Finally, the Corporation vigorously disputes how compliance with the fifth and final requirement can be achieved under the PLA. According to plaintiffs, the Corporation was required to first remit *some* amount of benefit payment directly into the private benefit plan it maintained on behalf of its "core" employees before any remaining "shortfall" could be paid out in cash. The Corporation disagrees, asserting that, as long as it "made coverage available" under its private plans, it was entitled to simply pay a full "cash supplement" directly to those core employees.

Plaintiffs claim this disagreement is simply confusion on the part of the Corporation as to its obligations under ERISA, an obligation which plaintiffs claim exists separate and apart from its obligations under New York's Labor Law. They point to Buffalo Laborers' Welfare Fund v. MCS Remedial Servs., Inc., 2008 WL 905917 (W.D.N.Y. Mar. 31, 2008), a case in

which the Court analyzed a PLA with similar provisions as the one at issue here, in support of this argument.

As here, the PLA at issue in Buffalo Laborers required contractors to make benefit payments "to those established jointly trusteed employee benefit funds designated in Schedule A." 2008 WL 905917 at *1. And as here, the PLA at issue in Buffalo Laborers gave contractors the option to satisfy this benefit payment obligation for certain, properly designated "core" employees by instead "providing coverage for those employees under a bona fide private benefit plan." Id. at *4.

On cross-motions for summary judgment, the Court in Buffalo Laborers rejected the defendant employer's assertion that the PLA's language permitted it to "pay fringe benefits in the form of a cash supplement to its employees" because the PLA "specifically require[d] contribution to the employee benefit funds." 2008 WL 905917 at *3; see also Buffalo Laborers' Welfare Fund v. MCS Remedial Servs., Inc., 2009 WL 3644326, at *1 (W.D.N.Y. Oct. 29, 2009) ("The Court has repeatedly found that neither the PLA nor the CBA allows for cash payments directly to [core] employees in lieu of benefit contributions.").

However, after carefully parsing the Buffalo Laborers decision, it is far from crystal clear, as plaintiffs insist, that the same conclusion should be reached with respect to the PLA at issue here. Plaintiffs seem to rely on the expansive language in Buffalo Laborers (or perhaps some residual, unidentified principle of ERISA) to assert that the "plain language" of the PLA in this case required the Corporation not just to "provid[e] those employees with coverage" under the private benefit plans, but also to specifically make some kind of payment *into* those plans or be faced with contribution liability to the plaintiff Funds.

But as even <u>Buffalo Laborers</u> noted, "courts have stated that employers may pay supplements in benefits, cash, or a combination of both." 2008 WL 905917 at *3; <u>cf</u>. <u>HMI Mech. Sys., Inc. v. McGowan</u>, 266 F.3d 142, 149 (2d Cir. 2001) (noting New York State's "total package approach" permits an employer, at its option, to meet its Section 220 obligations "in any form or combination" and an employer could thus "comply with Section 220 without making any contribution to an ERISA plan if it so chose").

In fact, despite its initial condemnation of the defendant employers' position, the Court in <u>Buffalo Laborers</u> ultimately grounded its grant of summary judgment to the plaintiff funds on a different, far narrower basis, holding:

> It is unclear whether defendant designated any of its employees as "core" employees. It has shown, at most, that it provided health insurance to "certain" of its employees and states that it provided cash supplements to the others. It is also unclear whether the cost of the health insurance coverage provided by defendant was equal to the "total Section 220 supplement amount." In any event, defendant has not established its compliance with the Buffalo Schools PLA and has admitted that it made no contributions to the benefit funds in violation of ERISA.

<u>Buffalo Laborers' Welfare Fund</u>, 2008 WL 905917, at *4.

In other words, summary judgment in favor of the plaintiff funds in <u>Buffalo Laborers</u> was ultimately proper because the evidence viewed in the light most favorable to the defendant employer failed to establish a triable issue of fact as to whether the employer had properly designated certain employees as "core" or whether the employer had paid those particular employees the proper amounts required by the PLA.

That is not the case here. Among other things, there is an apparent factual dispute between the parties in this case regarding whether the Corporation properly designated the

- 15 -

employees at issue as "core" within the requirements of the PLA.[5]  Compare Gangemi Aff. ¶ 11; with, e.g., Rosetti Aff. ¶ 29.

As in Buffalo Laborers, a duplicate benefit payment to the plaintiff Funds may well be warranted, but only if the Corporation fails to establish that it has met the criteria that would permit it to escape its contribution obligation under the PLA.  Since this question cannot be definitively resolved by reference to either party's current summary judgment filing, both parties' motions for summary judgment must be denied.

## IV. CONCLUSION

Plaintiffs' request to voluntarily dismiss the bulk of the claims in this action, including all claims against Gangemi, will be granted.  Therefore, Gangemi's motion to dismiss will be denied as moot.  However, both plaintiffs' and the Corporation's motions for summary resolution of the remaining claims must be denied at this juncture.  It is noted that some aspects of discovery remain incomplete.  In the interim, the parties are now encouraged to settle this matter so that further judicial intervention is unnecessary.

Therefore, it is

ORDERED that

1. Plaintiffs' motion to voluntarily dismissed certain claims is GRANTED;

2. All claims against defendant Richard Gangemi are DISMISSED with prejudice;

3. All claims against defendant Fahs Construction Group, Inc. not arising from the PLA are DISMISSED with prejudice;

4. Defendant Richard Gangemi's motion to dismiss is DENIED as moot;

---

[5] In fact, plaintiffs' reply submissions include a list of "material facts that they contend are in dispute."  See Pls.' Reply to Def.'s Statement of Material Facts, ECF No. 70.

5. Plaintiffs' motion for partial summary judgment is DENIED; and

6. Defendant Fahs Corporation Inc.'s motion for summary judgment is DENIED.

IT IS SO ORDERED.

_____
United States District Judge

Dated: March 21, 2016
       Utica, New York.